May it please the Court, good morning. Jason Harrow for Appellant 1 Fair Wage. As Your Honor said, I'll endeavor to reserve three minutes for rebuttal. Your Honors, this case is really governed by two signal Supreme Court cases in addition to the text of the statute. The first case is Bostock and the second case is Thompson. Bostock disposes, we think definitively, of the statutory argument. Person is defined to include corporations. My client, 1 Fair Wage, is a corporation. It is a corporation claiming to be grieved. It is within the plain text of the statute. Can I back you up and ask you where the Article 3 standing comes from? What's the injury to your client? Sure. The injury is typical Article 3 injury for nonprofits, Your Honor. That is to say, frustration of purpose, diversion of resources, and directly helping. Let me ask you about frustration of purpose. An old chestnut, of course, is the Supreme Court Sierra Club decision where the Sierra Club wanted to litigate, and the Court said, well, you need to show us that you've got a member who actually would have been affected by the proposed development in Mineral King. Obviously, the Sierra Club had a frustration of purpose, but the Court asked for more. I'm not sure that frustration of purpose all by itself, without anything more concrete, gets you where you need to get. What more do you have? There is more, Your Honor. There's diversion of resources. There's money. Tell me about the diversion of resources. The diversion of resources is explained in the complaint, and if the Court has questions about it, we can, of course, go in that. I'd like you to tell me what resources were diverted and why. Time and money. Let me first explain time. The time of the principles, as we allege in the complaint, including the principle of one fair wage, Saru Jaramayan, her time is diverted because she would like to spend time advocating. She would like to spend time educating the public about the impacts of discrimination in the restaurant industry, but she cannot. She cannot because she is dealing with the effects of the illegal practice here. There's also money being spent. One Fair Wage started a fund for affected restaurant employees, and it spent $500 per employee to the tune of many thousands of dollars, as we say in the complaint. Does that mean, and I saw that in the complaint, basically charitable contributions. Does that mean that if I make charitable contributions to a particular cause, I can then bring a suit to enforce some obligation that would help the cause? Your Honor, I'm not sure about that hypothetical, but this is not a charitable contribution to a cause. This is direct assistance. This is money coming into One Fair Wage that could be used for other purposes that is, in fact, going. So what if Judge Fletcher makes a charitable contribution to me, and then I give money to help out a person who's affected? So you're saying he can't sue, but can I sue? If there is sufficient injury, perhaps with other indications, and if you're within the zone of interest of the statute, Your Honor, that is what the Supreme Court has said. That's Havens Realty, Your Honor. Havens Realty is the signal case for standing, as Your Honor is well aware, in the context of an enforcement of a civil rights statute. What the Supreme Court said in that case is Havens Realty is impacted, the non-profit there is impacted by the fact that discrimination is occurring in housing developments. It would like to be doing other things. That's East Bay Sanctuary from just a couple of years ago in this Court, right? The immigration lawyers are spending time dealing with the effects of the illegal policy. But let me — Those are actually clients. Those are actually clients of the lawyers. That feels like that's very different from a non-profit saying, well, we — these are issues we like, and we'd rather reallocate our time in other ways, so we're aggrieved. Your Honor, there is some difference in direct services, though. I'd point out that on remand, we could allege more about direct services. There is assistance. We alluded in the complaint, Your Honor, to EEOC complaints brought by Darden workers. One Fair Wage has assisted monetarily and time-wise with those EEOC complaints as well, so it becomes very much like East Bay Sanctuary and other cases like that. But let me just say, Darden has not, on appeal, brought up Article III standing. I understand that it's the Court's obligation to always address it. And the District Court, too, didn't pass on it, but said that there's potentially enough to get over the hurdle. I think that the problem that the District Court opinion — evidence is here with this discussion is that there could be Article III standing, Your Honor. If the Court decides that it's questionable, we can add on remand. But I think the important thing is to clarify that the District Court was way off when it came to statutory standing. There is statutory standing here. There is no hard and fast rule that employees are the only proper plaintiffs in Title VII Act. As to statutory standing, you have to be aggrieved, but you have to be aggrieved within the meaning of the statute. So how do I read the statute that allows somebody other than the employee or people who are financially dependent upon the employee as protecting your client? Why is your client aggrieved when what they have is a general interest, a genuine interest, but a genuine interest in the problem, but they're not being affected by the sense — in the sense of they're not getting — they're in no way dependent upon the wages that are paid or not paid? They're not dependent upon the wages, Your Honor, but they are adversely affected. They are injured in a meaningful sense. And — But it has to be adversely affected within the meaning of the statute. Your Honor, yes, as the Thompson court said, within the zone of interest of the statute. But the Thompson court said what that means, and what we know about the plethora of zone of interest cases, is that means to be within the congressional purpose. It doesn't mean to be within the zone of injury, Judge Fletcher. I think that is what the District Court required, to match up the injury and the zone of interest. But it doesn't say zone of injury. It says zone of interest. Is there any case that goes as far as you're asking us to go in finding statutory standing? In the Title VII context, Judge Fletcher, there's not. We acknowledge there's two cases that the parties sort of dispute the meaning of, Simmons and Tolar. And that's the universe of Title VII cases here. But there is a plethora of cases conferring statutory standing in the APA context, which uses very similar reasoning on environmental groups. So Tolar is the Northern District of Alabama case. Correct. And that was disagreed with by Simmons, which is a Fifth Circuit case. So if we were to go Tolar's way, which is the way you'd like us to go, we would have to go into conflict with the Fifth Circuit. It would be a conflict with the Fifth Circuit. But, Judge Biby, the conflict the Fifth Circuit created the conflict by creating a conflict with Thompson. Thompson took a look at the statutory text and said that anyone within the zone of interest of the statute is a person claiming to be grieved. And, again, I want to really go back to first principles, to the text, right? Person is defined to include corporations. So the Simmons limitation of— Did Simmons cite Thompson? Simmons did cite Thompson. Okay. Well, then, at least in Simmons' view, it's not in conflict with Thompson. You can argue that it is. But we have a general presumption against going into conflict with another circuit. It's just a general presumption. It's not absolute. So, I mean, you'll have to persuade us that Simmons is wrong in light of Thompson. That's right. And Simmons is wrong in light of Thompson, Your Honor, because Simmons is atextual and Simmons doesn't properly apply the zone of interest test. The zone of interest test, again, you know, we've preserved the argument that the zone of interest test, I should say, is wrongly decided. Indeed, it seems to be a sort of supertextual device. Now you're going back 50 years, right? You're going back to ADAPT. So in those cases, to argue the Supreme Court was wrong on the zone of interest? Well, no. Thompson was 2011, Your Honor. Before that, there was dicta, as the Court discussed in Thompson. There was dicta saying that what Congress was trying to do with using the term person aggrieved is go to the limits of Article III injury. The Court in 2011 in Thompson said, well, it's slightly narrower, but I think the key point is only slightly. It's only slightly narrower. And, Your Honors, I see I'm at about a minute 40. I would like to reserve some time for rebuttal. So I'll stop there unless the Court has further questions. Yes, that sounds fine. Thank you. Thank you. Good morning, Your Honors. If it may please the Court, my name is Chris Brom, and I'm appearing on behalf of Respondent Darden Restaurants, Inc. Your Honors, in 2011, the U.S. Supreme Court in Thompson versus North American Stainless provided a two-pronged analysis for what it means to fall within the Title VII's zone of interest, i.e., what it means to have statutory standing within the meaning of Title VII. This Court should affirm the dismissal of the District Court's dismissal of the non-fair wages complaint because their claims for Title VII do not fall within the two-pronged analysis that the Supreme Court provided in Thompson. First, let's go back and look at what the Supreme Court in Thompson explicitly stated. They stated that the purpose of Title VII is to protect employees from employers' alleged unlawful actions. And I want to place an emphasis on the phrase, employees from their employers. This phrase— Well, but it's pretty obvious that the plaintiff here is trying to do exactly that. Well, Your Honor, we would slightly disagree with that concept because the relief and the claim that is being brought is not for the purpose of remedying the employees. It's for the purpose of remedying one fair wage's purported alleged harm. In this particular instance, one fair wage is bringing in a claim for a monetary relief to be provided to them, and they are also bringing an injunction, and that would have to qualify for the standards as to what harm they have suffered. This is not an associational— So one fair wage is not asking that fair wages be paid to the employees? That is the derivative result of the actual purpose of this lawsuit, Your Honor. The purpose of this lawsuit for one fair wage, as it relates to the claim that they're seeking, is to get money and an injunction in their name. They're the ones who are asserting standing on behalf of— And what would the injunction read if they get what they want? I would imagine the injunction would relate to the policies that are being applied to the employees. However, it's one fair wage's injunction in their name. They're the ones who would need to be enforcing it, and they would also— But it does sound as though what they're trying to do is protect the employees. Fair enough, Your Honor. But even if that is their goal, there is a concept that you still need to be able to claim that you are an employee in an employment relationship. As far as we know, there has only been only one case in the 60 years that the statute has existed that has went in favor of allowing a non-employee to assert a claim on behalf of a Title VII claim, and that is Tolar. And as Your Honors have previously noted, there is a Fifth Circuit decision that explicitly says that Tolar got it wrong, and they did a pretty well-reasoned analysis. Moreover— Counsel, Tolar, it is true it's a non-employee. If I remember right in Tolar that the entity was directly sort of going after in order to allegedly retaliate against the person. So it would be like me going after your brother to get at you. Right. And so that kind of leads me to a question. In theory, you've got the Simmons rule, which is they just cut it off at employees,  and then you've got—but even Tolar seemed to—even if you want to be consistent with Tolar, but I think your client might still prevail under a rule that said, well, it has to be—they can't—they have to be directly the target of the retaliatory action. They can't be like indirectly—just somebody that's indirectly affected because that's really—so which rule if we, you know, which rule would you prefer if we were going to, you know, if you got to write a decision in this case? Your Honors, I think that the second—and that's the second prong it also goes—that comes from Thompson. If your Honors was to conclude that it's not simply just an employee or an employment relationship, the second prong of the analysis from Thompson I think is fatal in that it needs to be somebody who has been a—on the receiving end of the alleged unlawful policy or the alleged unlawful conduct. Not just somebody indirectly affected. Otherwise, you end up in Thompson's shareholder analogy. And incorrect, Your Honor. And I think that that is an analogy that cannot get lost on this Court. Because that's tighter—that's a closer fit, it seems to me, to the zone of interest concept. It's the people that are being directly gone after that would fall within the zone of interest of Title VII, not—yeah, so you're saying—it sounds to me like you'd probably be fine with either one, but do you have a preference? I will take either one. I think from our standpoint, to not draw a conflict with the Fifth Circuit, we do think that you should—this Court should actually cut it off at the first step, which is that there needs to be an employment relationship between— Well, it wouldn't, in theory, be a conflict with the Fifth Circuit even if we used the other as long as we didn't say—you know, we just said that's all we have to decide in this case, right? That's correct. You could defer issuing a ruling on that because I think at the second step, they certainly—this claim fails because one fair wage is, in essence, in principle, the exact shareholder suit that the Supreme Court provided. Again, the Supreme Court said a shareholder bringing a lawsuit because they have monetarily been harmed by an employer who has allegedly terminated a key employee for a discriminatory reason, it would be absurd, and that is not my word, Your Honor. That's the Supreme Court's word to conclude that that shareholder has standing to sue. The shareholder, just like one fair wage, isn't the recipient of the alleged unlawful conduct, which in this particular case, they're alleging it's the tipping policy. One fair wage doesn't have any direct relationship with that tipping policy. It's derivatively—they need to bootstrap themselves to somebody else's purported claim for discrimination. Right. So I'm going to ask—when your friend on the other side gets back up, I'm going to ask him how to distinguish himself from the absurd, quote-unquote, Supreme Court's absurd hypothetical because I think that is important. Like, what is it? Why is—why are they different? They're obviously not shareholders, but—so I'm giving you a little heads-up that that's common because that's, I think, what this turns on is—the other question I guess I've got for you is it seems to me your friends on the other side are hammering textualism, right? And that's true. I mean, the text is really broad of this. So the question is just whether or not the—but the Supreme Court has told us to look at the zone of interest test, which is not really a textualist. It's sort of a—it's sort of a gloss that's read on these. And it seems to me that that favors your side. So is there—do we just have to pick one? Are we going to be good textualists or be—or apply zone of interest? Or is there a way to circle the square on that? Well, Your Honors, I actually don't think that the text is as clear as my friends on the other side would like to think because it doesn't simply just say that any person has a right to bring a lawsuit under Title VII, and their argument has always been that corporations is defined within the term person, and therefore because they're a person, they have statutory standing. But they're completely ignoring the rest of the part of the statute, which is persons claiming to be aggrieved by an alleged unlawful employment practice. It's the aggrieved by the alleged unlawful employment practice, which I think brings us in line with the shareholder example. The textual hook for the zone of interest test would be the aggrieved is sort of—it would be sort of your— Exactly. And I think to be— And aggrieved could be read really broad, or it could be read more narrowly. And you'd say the Court has kind of instructed us to not read it as broadly as possible. Exactly, Your Honors. The Supreme Court has given us an example that says that when you're talking about aggrieved, that means that you actually have to be the—on the receiving end. In theory, a shareholder could be aggrieved, but we know from the Supreme Court that a shareholder doesn't count. Exactly, Your Honor. So this is not the case in front of us. Do you agree with other courts that have so held that someone who is dependent upon the wage earner is aggrieved? That is to say, the children of the person receiving the wages and so on? That's not in front of us, I realize. That is not in front of us, but if our position is that they still would not have statutory standing because at the end of the day, they're not on the—the children is still not the recipient of the alleged unlawful employment— But if I'm not talking law, that is to say if I'm not necessarily talking about the statute, but if I'm just using ordinary English, if I'm a child of a wage earner who's being underpaid, I'm probably suffering because of that. That is to say, I am aggrieved. Now, whether that's aggrieved within the meaning of the statute is a different question. Correct. But you're just saying you don't agree with those cases either. I understand it's not in front of us. Yeah, I don't agree with it. Just for the simple proposition that it's still a—as a child, you're still derivatively needing to prove up the alleged discrimination happening to your parents. And I think that's the concept that the Supreme Court is saying that we have to cut the line off at some point. And this concept is consistent with a prior 1986 decision from this Ninth Circuit, Patty v. Pacific Northwest, which in that particular case, the plaintiffs were trying to bring a claim that they were being harmed by being a part of a cohort that was comprised predominantly of females. And the company's policy of underpaying females was derivatively impacting them. Now, obviously, your statement on this doesn't necessarily free us from the obligation to look. You did not argue lack of Article III standing. Do you think there is Article III standing? Do you concede that for your purposes? I do not, Your Honor. And I think the end result is the same, because I think that the Supreme Court— Well, I understand the end result's the same, but I ask you a different question. Do you agree that there's Article III standing? We do not concede that there's Article III standing. But you didn't argue the question. But we did not argue the question. And with that, Your Honors, if you have no further questions, I would like to— All right. Well, thank you, counsel. So we have a few minutes, or a minute and a half. So why are you not like shareholders? Yes, Judge Van Dyke, let me get right to that. We're not like the shareholders because it is within my client's core purpose, day-to-day operations, to eradicate the exact harm that's here. Let me point out, Judge Van Dyke, that this is not a novel conclusion. Under the ADA, under the Fair Housing Act, under the APA, nonprofit organizations, but not individuals, but not shareholders, have standing. Because Congress understands that their core purpose, what they do every day, is vindicate the rights under these public statutes. They are not people walking off the street. They are not shareholders. So do you think, kind of, I think Judge Fletcher gave the example of a child. But let me use something like that, which would be the landlord of, you know, a landlord that's got five Darden's Service persons living there. Could that landlord bring a lawsuit? Has a person aggrieved? No, Your Honor. And again, the reason is that zone of interest and what the landlord does every day. Congress's purpose is not to permit landlords to vindicate public statutes. So you don't think a child could either, really? You don't think a child's within that? I think it sounds like your rationale would exclude children, too. No, they have a much closer connection. And as the Supreme Court said in Thompson, with respect to the fiancé of someone that was, that filed an EEOC complaint, right? That's a close enough connection. So I think the question is, is there a really close connection, right? The fiancé was also an employee. Was also an employee. That's correct, Your Honor. And if I may, I know I'm a few seconds over, but just to conclude, you know, again, I want to emphasize the final points are, this is not novel. Here's Haven's Realty, Judge Fletcher. Nonprofit corporation whose purpose was to make equal opportunity in housing a reality in the Richmond metropolitan area. That's the organization that had standing. You're talking Haven's Realty? That's the Tester case? Yes, that's the Fair Housing Act Tester case. Yes. In Haven's Realty, what you have is a black and a white tester both going to the premises. The white tester is told it's available. The black tester is told no. And the Court says, well, the black tester has a right not to be lied to. But it's something that happens to the tester himself. But I just refer the Court to that. I don't see the relevance of that case. If I may, the nonprofit there also has standing. There's a bunch of plaintiffs, and I just refer to the Court, 435 U.S. 368. That there's a nonprofit in that case that also has standing to make the same claim. And again, just to conclude, I do think if these are our questions, as Your Honors had a colloquy with opposing counsel, they didn't brief this issue of Article III standing. The District Court didn't pass on it. There is more to say. I've described some of it here. It's a close question, and I think our remedy would be to clarify the standard, clarify that the text governs and permits organizations like One Fair Wage in theory to have Article III standing and have statutory standing, and we can amend on remand. Thank you, Your Honors. Well, thank you, Counsel. Thank you to both sides. This was a very helpful presentation of argument. And with that, this case is submitted. This is our last case of the day, and so we're concluding. The Court will reconvene on Thursday.
judges: FLETCHER, BYBEE, VANDYKE